1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KATHRYN McKENZIE,                    )
                                     )
                    Plaintiffs,      )        2:12-cv-0044-KJD-NJK
                                     )
vs.                                  )
                                     )
WALGREEN CO, et al,                  )            **O R D E R**
                                     )
                                     )
                    Defendants.      )
_____)

This matter came before the Court on a hearing on the Plaintiff's Emergency Motion for Extension of Scheduled Discovery Deadlines Pursuant to Local Rule 26-4 (First Request) (#44), Defendant's Emergency Motion to Quash (#45), Plaintiff's Emergency Motion to Compel (#46), and Plaintiff's Motion for Sanctions (#47). The Court has considered the Plaintiff's Emergency Motion for Extension of Scheduled Discovery Deadlines Pursuant to Local Rule 26-4 (First Request) (#44), the Defendant's Response (#51), the Plaintiff's Reply (#56); the Defendant's Emergency Motion to Quash (#45), the Plaintiff's Response (#50), the Defendant's Reply (#53); the Plaintiff's Emergency Motion to Compel (#46), the Defendant's Response (#52), the Plaintiff's Reply (#55); and the Plaintiff's Motion for Sanctions (#47), the Defendant's Response (#57), and the Plaintiff's Reply (#59).

**BACKGROUND**

This is a slip and fall case stemming from an incident on January 26, 2010, in which the Plaintiff, Kathryn McKenzie, slipped and fell on liquid laundry detergent at a Walgreens store in Las Vegas, Nevada.   McKenzie filed this lawsuit against Walgreens on December 15, 2011, in

the District Court of Nevada.  The case was removed to the United States District Court for the District of Nevada on January 11, 2012. (Docket No. 1).  The original scheduling order for the case set the discovery deadline for July 16, 2012. (Docket No. 25). That deadline was later modified to October 15, 2012. (Docket No. 35). The parties began the discovery process without issue.

**1.      Discovery Time-line**

On April 24, 2012, McKenzie served Walgreens with her written discovery.  Walgreens produced its first supplemental disclosures, including a recorded statement, on May 15, 2012. That same day, Adrian Dixon, a former Adjuster for Sedgwick Claims Management Services, Walgreens' agent, interviewed McKenzie about the slip and fall incident.  He stated in the interview that someone must have dropped the detergent bottle, causing it to leak. After McKenzie stated that she did not touch the detergent bottle, Dixon then speculated that the bottle must have been placed back on the shelf by whomever dropped it. On May 16, 2012, Walgreens deposed McKenzie.  The following month, on June 5, 2012, Walgreens produced redacted claims notes and a corresponding privilege log. It deposed Edward Kendrick, a witness to the incident, on June 7, 2012.  Kendrick testified that he saw McKenzie holding the leaking bottle before she fell.  On September 13, 2012, Walgreens disclosed its expert report by Dr. Robert Kadlec, Ph.D, P.E., which stated it was likely that McKenzie dropped the bottle, causing it to leak detergent before she fell in the detergent.

**2.      Discovery Dispute**

On September 25, 2012, McKenzie's counsel emailed Walgreens requesting the contact information for Dixon.  According to Walgreens, it responded to the email via phone and informed McKenzie's counsel that Dixon was no longer employed by Walgreens. Therefore, Walgreens indicated, it would not provide that information.  McKenzie's counsel disputes whether that telephone conversation took place.[1]  On October 10, 2012, five days before the

---

[1]Walgreens claims it called McKenzie, and points to an intra-office email as evidence. Email attached as Exhibit D to Motion to Quash (#45).  McKenzie asserts that there was no phone call, and based on the parties' cooperation in discovery up to that point, she believed Walgreens would be producing the contact information.  She points to her October 10, 2012 email as evidence that she

discovery deadline, McKenzie's counsel sent another email requesting Dixon's contact
information.  The parties exchanged emails on October 11, 2012, and Walgreens asserted that it
would not provide that information to McKenzie.  On October 12, 2012, McKenzie served
Walgreens with a subpoena for the deposition of Dixon and for the entire claims file from
Segwick's Custodian of Records.

Also on October 12, 2012, McKenzie's counsel sent Walgreens a letter requesting
information she believed was incorrectly listed as privileged. Letter dated October 12, 2012,
attached as Exhibit 10 to Response to Motion to Quash (#50).  She again contacted Walgreens on
October 16, 2012. Response to Motion to Quash (#50) at 12. Walgreens indicated that it believed
the items listed in the privilege log were privileged and further, because the discovery deadline
had already passed, it would not agree to *in camera* review. *Id*. Discovery had closed on October
15, 2012.

On October 18, 2012, McKenzie filed an Emergency Motion to Extend Discovery (#44)
and an Emergency Motion to Compel (#46).  That same day, Walgreens filed an Emergency
Motion to Quash the Subpoena (#45).  All these motions arose out of McKenzie's desire to either
depose Dixon or be provided the documents Walgreens listed in its privilege log dated June 5,
2012, as privileged. On October 25, 2012, McKenzie filed her Motion for Sanctions re Discovery
(#47).  The Motion for Sanctions (#47) alleges that Walgreens engaged in spoilation of evidence.

## DISCUSSION

**I.     McKenzie's Emergency Motion to Extend Discovery (#44)**

The focus of the Motion to Extend Discovery is the Plaintiff's desire to depose Dixon.[2]

---

had not been called.

[2]As a side note to this argument, the parties in their briefing dispute whether Dixon conducted
an investigation.  McKenzie asserts that he did and Walgreens asserts that he did not.  Dixon, during
his interview with McKenzie, stated that he interviewed all of Walgreens' employees and the
ambulance personnel. Transcript of Interview, lines 279-281, attached as Exhibit 4 to Motion to
Extend Deadline (#44).  Additionally, Walgreens' privilege log makes note of "Mr. Dixon's
Investigation."  Walgreens Privilege Log, attached as Exhibit 7 to Plaintiff's Motion to Compel
(#36). At the hearing, Walgreens counsel acknowledged that there was an investigation. Documents
pertaining to Dixon's investigation will be discussed further in the analysis of the Motion to Quash
and the Motion to Compel.

1   The Subpoena notices the deposition of Dixon for October 22, 2012, which is after the discovery

2   deadline date of October 15, 2012.  Therefore, in order for the deposition to proceed, the

3   discovery deadline must be extended.

4         **A.    Good Cause**

5         Applications to extend discovery dates must be supported by good cause. FED. R. CIV. P.

6   16(b)(4); LR 26-4. The good cause standard primarily considers the diligence of the party

7   seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.

8   1992). The scheduling order can be modified if it cannot reasonably be met despite the diligence

9   of the party seeking the extension. *Id*. Good cause may be found if the moving party can show

10  that it could not comply with the schedule due to matters that could not have been reasonably

11  foreseen at the time of the issuance of the scheduling order. *Kuschner v. Nationwide Credit, Inc.*,

12  256 F.R.D. 684, 687 (E.D. Cal. 2009).  If the moving party was not diligent, the inquiry should

13  end. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Mammoth*

14  *Recreations, Inc.*, 975 F.2d at 609.  However, the Court has broad discretion in supervising the

15  pretrial phase of litigation. *Zivkovic*, 302 F.3d at 1087.

16        Here, McKenzie asserts that there is good cause to extend the discovery deadline because

17  Walgreens did not indicate until September 13, 2012, in the expert report, that it believes

18  McKenzie dropped the bottle of detergent, thus causing her own injuries.  According to

19  McKenzie, this assertion conflicts with statements made by Dixon in his interview of McKenzie.

20  During the interview, Dixon stated that someone must have dropped the bottle of detergent, thus

21  causing it to leak. Transcript of Interview, lines 328-332, attached as Exhibit 4 to Motion to

22  Extend Deadline (#44).  This alleged contradiction between Dixon's statement and the expert

23  report was, according to McKenzie, the first indication McKenzie had that Walgreens would

24  claim that McKenzie dropped the bottle.  Thus, McKenzie argues that the expert report made the

25  deposition of Dixon necessary.  McKenzie also argues that deposing Dixon will not be necessary

26  if Walgreens is required to produce the entire claims file, which includes Dixon's investigation

27  notes.

28  ...

1    McKenzie has failed to show good cause to extend the discovery deadline.  First, no
2    contradiction exists between Dixon's statement that someone dropped the detergent bottle and
3    the expert report's conclusion that it was likely McKenzie who dropped the detergent bottle.
4    McKenzie is "someone" and Dixon was simply theorizing about what may have happened, in
5    response to McKenzie's statement, to further the interview. Thus, the September 13, 2012,
6    production of the expert report did not create a sudden need to depose Dixon.

7    Further, the expert report was not, in fact, the first time an assertion was made that
8    McKenzie dropped the detergent bottle. The assertion that McKenzie dropped the detergent
9    bottle was first made on June 7, 2012, by the sole eyewitness to the incident. It should have been
10   clear from that point that Walgreens would use this information to its benefit.

11   Finally, McKenzie has been aware of Dixon's role in the proceedings since May 2012,
12   when he interviewed her.  During the interview, Dixon told McKenzie he was interviewing other
13   Walgreens employees and the paramedics. Thus, McKenzie's asserted reasons for wanting to
14   collect Dixon's contact information existed as early as May.  Her contention that it is Walgreens'
15   fault the deposition did not occur before the discovery deadline is therefore inaccurate. McKenzie
16   made no effort to collect contact information for Dixon until the end of September, two weeks
17   after receiving the expert report and five months after her interview with Dixon.  Additionally,
18   Mckenzie's sole attempt to collect contact information for Dixon at the end of September was a
19   single email, to which Walgreens asserts it responded. However, regardless of whether
20   Walgreens responded, McKenzie made no further attempt to obtain this contact information until
21   October 10, 2012, five days before the discovery deadline.

22   Accordingly, no good cause has been shown.  The disclosure of the expert report did not
23   create a sudden need to depose Dixon, and any actual reason to depose Dixon was apparent five
24   months before the discovery deadline.

25   **II.    Walgreens' Motion to Quash (#45)**

26   Walgreens has moved to quash the Subpoena served on October 12, 2012, which seeks
27   the production of the entire claims file; specifically, documents that Walgreens listed in its June
28   5, 2012, privilege log.  According to Walgreens, the Subpoena was procedurally improper.

1  Walgreens also asserts that the Subpoena seeks documents which are privileged and were

2  appropriately redacted from the claims file sought by McKenzie.[3] McKenzie counters that the

3  information listed as privileged is not actually privileged.  Additionally, she claims any

4  information that may be privileged can be redacted and the documents should still be turned over

5  because there is a substantial need.

6  **A.  Procedure**

7  Walgreens argues that the Subpoena was not properly served for three reasons:  First, the

8  Subpoena was not sent by certified mail (McKenzie faxed and sent the Subpoena by regular

9  mail); second, the Subpoena seeks to have records produced which are located outside the 100-

10  mile jurisdictional limitation set by statute for non-parties; and third, the Subpoena provided a

11  minimal amount of time for production.

12  Concerning the lack of certified mail, Walgreens has failed to point to a federal rule, local

13  rule, or case in which certified mail was deemed mandatory.  The 100-mile jurisdiction limitation

14  does not apply to production of documents - only to travel - and Walgreens' citation to

15  Fed.R.Civ.P. 45(a)(2)(B) and (C) for this argument is misplaced.  Finally, while the Subpoena

16  did provide for a minimal amount of time to comply, Walgreens has not indicated how this fact

17  makes the Subpoena fatally flawed.  Thus, the service of the Subpoena was not procedurally

18  flawed.

19  **B.  Privilege**

20  Fed.R.Civ.P. 26(b)(3), protects "the mental impressions, conclusions, opinions, or legal

21  theories of an attorney or other representative of a party concerning the litigation." *U.S. E.E.O.C.*

22  *v. Bill Heard Chevrolet Corp.*, 2009 WL 2489282 (D. NV 2009); *Hickman v. Taylor*, 329 U.S.

23  495 (1947). A party seeking to withhold otherwise discoverable materials on the basis of work

24  product must demonstrate that the materials withheld are (1) documents and tangible things; (2)

25  prepared in anticipation of litigation or for trial; and (3) the materials were prepared by or for the

26  party or the attorney asserting the privilege. *See* Fed. R. Civ. P. 26(b)(3); *see also Goff v.*

27

28       [3]The Subpoena also seeks to depose Adrian Dixon.  However, as discussed above, no good cause exists to allow the deposition of Dixon to proceed.

1   *Harrah's Operating Co., Inc.*, 240 F.R.D. 659, 660 (D. Nev. 2007). The party asserting the

2   privilege must also "describe the nature of the documents, communications, or tangible things

3   not produced or disclosed—and do so in a manner that, without revealing information itself

4   privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

5   "[A] lawyer need not be involved at all for the work product protection to take effect." *Goff,*

6   *supra*, 240 F.R.D. at 660 (citations and internal quotations omitted).

7           In this case, Walgreens asserts that it already provided the entire claims file with a

8   corresponding privilege log that described the nature of the documents and communications.

9   Walgreens explains that "the redacted information includes privileged communications, and

10  investigation at the direction of General Counsel for Walgreens Co., which include various

11  attorneys' and their respective agent's investigation analysis, notes, thoughts, and impressions."

12  Walgreens' Response (#52) at 8. McKenzie, however, contends that the privilege log is not

13  accurate because many of the documents listed as privileged cannot be privileged.  Specifically,

14  she argues, all documents created before February 5, 2010, when McKenzie informed Walgreens

15  that she had obtained counsel, could not have been prepared in anticipation of litigation. As for

16  the documents prepared after February 5, 2010, she argues that she believes they were created in

17  the ordinary course of business and not in anticipation of litigation. The notes allegedly contain

18  factual information regarding the investigation, and McKenzie argues that any opinions or

19  evaluations can be redacted.

20          The Court has reviewed the privilege log and finds it to be woefully deficient. Under

21  Fed.R.Civ.P. 26(b)(5), the privilege log must describe the information that is claimed to be

22  privileged in a manner that "will enable other parties to assess the claim." The majority of

23  Wallgreens' privilege log fails to describe the claimed privileged information in a manner that

24  would allow the Court to assess the claim.  For example, well over half of the entries describe

25  "notes regarding" the "investigation" or "status of claim." Privilege log, attached as Exhibit 7 to

26  Response to Motion to Quash (#50).  Those entries provide no more explanation other than who

27  wrote the note, and some entries lack even that. *Id*.   Based on those descriptions, the Court

28  cannot assess which notes are privileged and which are not.  Additionally, Walgreens counsel

1   acknowledged at the November 16, 2012, hearing that Dixon interviewed a number of people,

2   and that notes relating to those interviews would be in the privilege log. Yet, nowhere in the

3   privilege log is there an indication of which "note" reflects those interviews. *Id.*

4        Thus, as discussed at the hearing, Walgreens must provide more detail in its privilege

5   logs. Accordingly, the Court orders Walgreens to revise or augment its privilege logs so that the

6   Court and Plaintiff can adequately assess the claims of protection from disclosure. Walgreens has

7   one week from the signing of this order to comply.   If, after Walgreens revises the privilege log,

8   the parties wish to bring this dispute before the Court again, they must meet and confer before

9   doing so.[4]

10       The privilege log shall reveal the identity and position of all senders/creators and

11  addressees/recipients. Walgreens shall provide a description of each communication or document

12  withheld with sufficient detail that the Plaintiff can readily assess the claim of privilege.

13  Although "strategy" or the detailed substance of the subject communications need not be

14  disclosed, Walgreens must provide a description of the general topic that is detailed enough that

15  the Plaintiff can ascertain whether the communication is truly privileged. This is especially

16  important where the communications are among non-attorneys, and it is entirely unclear from the

17  present descriptions that these communications were in furtherance of an attorney-client

18  communication or in response to a query by Walgreens' attorney.

19  **III.    McKenzie's Emergency Motion to Compel and/or Request for In Camera Review**

20  **         (#46)**

21       This Motion is another attempt to obtain the documents listed in Walgreen's privilege

22  log.  McKenzie asserts she is entitled to know the result of the Dixon investigation, "as it may

23  prove that Walgreen's defense is false."  Motion to Compel (#46) at 13.  She additionally

24  requests *in camera* review of these documents.  In opposition, Walgreens asserts that the Motion

25  to Compel was not timely and seeks privileged information. Although the parties again discuss

26

27          [4]Although the Court defers ordering an *in camera* review or disclosure of the documents as
    requested by the Plaintiff, the Court may consider those measures if the Defendant fails to comply
28  with the Court Order to provide a sufficient privilege log to the Plaintiff.

the privilege issue in this Motion, the same arguments and analysis as in the Motion to Quash apply. Accordingly, the discussion below will be limited to the timeliness issue and the *in camera* request in the Motion to Compel (#46).

### A.   Timeliness

"Rule 37 of the Federal Rules of Civil Procedure permits a discovering party to move for an order to compel a complete response to properly submitted interrogatories or requests for production." *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999); *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 170 (D.Nev.1996). However, "[t]he requesting party cannot delay a motion to compel with impunity." *Gault,* 184 F.R.D. at 622. The Federal Rules of Civil Procedure and the Local Rules of this District do not specify a time limit for filing a motion to compel. *Id.* Therefore, the Court is called upon to establish a reasonable time for a party to bring a motion to compel. *Id.* In *Gault,* the Court found it significant that there was no showing that the delay to file the motion to compel was caused by matters outside the moving party's control, and denied the Plaintiff's motion. *See Id.* (Motion was filed 136 days after answers to interrogatories). However, absent unusual circumstances, a motion to compel should be filed before the scheduled date for dispositive motions. *Id.*

Here, the disputed privilege log was given to McKenzie on June 5, 2012.  The Motion to Compel was filed October 18, 2012. The dispositive motion cut off date was November 14, 2012.  As discussed above, the disclosure of the expert report did not create a new aspect of Dixon's involvement or the investigation of the claim. Thus, no matters outside of the parties' control occurred that lead to the delay.  It took McKenzie over 154 days to file the Motion to Compel. Nevertheless, the Motion was filed before the dispositive motion cut off date and is timely.

### B.   *In Camera* Review

The Motion to Compel is the only motion in this group of motions that discusses the request for *in camera* review at length.  However, it is mentioned in the Motion to Extend Discovery and the Motion to Quash as well.  As explained above, the Court does not find *in camera* review to be appropriate at this time. However, if the issues in this motion are still

1   disputed after Walgreens revises its privilege log and after the parties conduct a proper meet and

2   confer, the Plaintiff may renew this motion within one week of receipt of the revised privilege

3   log.

4   **IV.     McKenzie's Motion for Sanctions (#47)**

5          The Motion for Sanctions is focused on an entirely different set of facts than the above

6   motions.  Here, McKenzie moves for sanctions for spoilation of evidence. Specifically, she

7   asserts that because the detergent bottle in question was disposed of, after being photographed,

8   Walgreens' Answer should be stricken entirely.  Alternatively, she seeks to have the expert report

9   stricken.

10         Plaintiff's Counsel acknowledged during the hearing that no District of Nevada nor Ninth

11  Circuit case law supports striking Walgreens' Answer under these circumstances. Accordingly,

12  the Court denies that request.

13         In a similar case, *Anderson v. Wal-Mart Stores, Inc.*, 2011 WL 4621286 (D.Nev. 2011),

14  the plaintiff ran into a step stool placed against a wall, lacerating her leg. The store manager took

15  the stool, placed an "evidence" tag on it, photographed it, and set it aside in her office. The store

16  was later unable to produce it as evidence. The court found that Wal-Mart was not "fault-free"

17  and thus sanctions were appropriate.

18         "A party's destruction of evidence need not be in 'bad faith' to warrant imposition of
        sanctions. 'However, a party's motive or degree of fault in destroying evidence is relevant
19      to what sanction, if any, is imposed.'" *Anderson*, 2011 WL 4621286, *4, citing *In re
        Napster*, 464 F.Supp.2d at 1066–67, citing *Baliotis v. McNeil*, 870 F.Supp. 1285, 1291
20      (M.D.Pa.1994).

21         In *Anderson*, as in the Motion for Sanctions (#47) here, plaintiff's counsel sought to strike

22  the defendant's answer. Despite finding some culpability on the part of the defendant, the court

23  denied plaintiff's request to strike the answer as not warranted. Instead, the court fashioned the

24  following remedy: "Defendant should be preluded from introducing any testimony based on a

25  witness's inspection of the step stool that is contrary to the condition depicted in the

26  photographs." *Id*. In other words, the court was concerned about the use of testimony to

27  contradict or supplement what was shown by the photographs.

28         Here, like in *Anderson*, Walgreens is not "fault free."  However, at the hearing, Plaintiff's

1    Counsel stated she wanted the expert's testimony excluded even though it was not based on an

2    inspection of the detergent bottle. Indeed, Plaintiff's Counsel was clear that she wanted to keep

3    the testimony of the witnesses who inspected the bottle.  Thus, the Plaintiff is seeking to strike

4    the expert's testimony even though there is little to no connection between that testimony and the

5    discarded bottle. Other than a desire to punish Walgreens, the Plaintiff has not articulated any

6    reason why striking the expert's testimony would be an appropriate sanction.  Accordingly, the

7    Court finds that a striking the expert's testimony is not an appropriate sanction. Rather, the Court

8    shall adopt a similar remedy as fashioned in *Anderson*.  See, *Anderson*, 2011 WL 4621286, *4.

9    Walgreens shall be precluded from introducing testimony based on a witness' inspection of the

10   detergent bottle that is contrary to the condition depicted in the photographs.

11                                            **CONCLUSION**

12          Based on the foregoing, and good cause appearing therefore,

13          IT IS HEREBY ORDERED that Plaintiff's Emergency Motion for Extension of

14   Scheduled Discovery Deadlines Pursuant to Local Rule 26-4 (First Request) (#44) is **DENIED**;

15          IT IS FURTHER ORDERED that Defendant's Emergency Motion to Quash (#45) is

16   **GRANTED**;

17          IT IS FURTHER ORDERED that Plaintiff's Emergency Motion to Compel (#46) is

18   **DENIED without prejudice**;

19          IT IS FURTHER ORDERED that the **Defendant is to revise its privilege log** in

20   accordance with this Order and provide such revised privilege log to the Plaintiff within one

21   week of this Order;

22          IT IS FURTHER ORDERED that Plaintiff's Motion for Sanctions (#47) is **GRANTED**

23   **in accordance with this Order**.

24          DATED this 18th day of January, 2013

25

26

27                                            _____
                                              NANCY J. KOPPE
28                                            United States Magistrate Judge