UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KATHRYN McKENZIE,<br><br>                Plaintiffs,<br><br>vs.<br><br>WALGREEN CO, et al,<br><br>                Defendants. | 2:12-cv-0044-KJD-NJK<br><br>**O R D E R** |

This matter comes before the Court on the Plaintiff's Emergency Motion to Compel (#69). The Court has considered the Plaintiff's Emergency Motion (#69), the Defendant's Response (#86), and the Plaintiff's Reply (#87).

**BACKGROUND**

On April 24, 2012, McKenzie served Walgreens with her written discovery. Walgreens produced its first supplemental disclosures on May 15, 2012. The following month, on June 5, 2012, Walgreens produced redacted claims notes and a corresponding privilege log.

On October 12, 2012, McKenzie's counsel sent Walgreens a letter requesting information she believed was incorrectly listed as privileged. Walgreens maintained its position and did not provide McKenzie the documents she requested. On October 18, 2012, McKenzie filed an Emergency Motion to Compel (#46) seeking those documents. The Court, in ruling on the Emergency Motion to Compel (#46), determined that Walgreens' privilege log was deficient. Order (#66). The Court ordered Walgreens to supplement its privilege log in a manner that would allow

McKenzie and the Court to determine whether the listed documents are indeed privileged. *Id.* Walgreens complied with the Court's Order and provided McKenzie with a new privilege log on January 25, 2013. *Id.* After reviewing the new privilege log, McKenzie still believes Walgreens needs to produce documents it has listed as privileged. The parties met and conferred about this ongoing dispute, and were not able to reach an agreement.[1] McKenzie filed the present Emergency Motion to Compel (#69) on February 1, 2013. In the Emergency Motion (#69), McKenzie is seeking production of documents she believes are incorrectly labeled as privileged or, in the alternative, *in camera* review of those documents.

## DISCUSSION

### I. Work Product Doctrine

The parties dispute whether the documents listed in Walgreens' privilege log are protected by the work product doctrine. The work product doctrine is codified in 26(b)(3)(A):

> (**A**) **Documents and Tangible Things**. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (**i**) they are otherwise discoverable under Rule 26(b)(1); and
>
> (**ii**) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

McKenzie asserts the investigation notes created by Walgreen's third-part investigator, Sedgwick: (a) were not created in anticipation of litigation, (b) are factual in nature and created in the ordinary course of business, and (c) should be produced because she has a substantial need for the documents.

### A. In Anticipation of Litigation

At issue is whether documents created by Sedgwick prior to McKenzie retaining counsel were created in anticipation of litigation. Sedgwick's involvement in the case began on January 26, 2010, the date McKenzie slipped and fell. The store employees contacted Segwick to report the

---

[1] The Court notes that although both parties assert that there was a substantial meet and confer, the parties should have made a significantly more sincere effort to reach an agreement considering almost every entry in the privilege log is still in dispute.

- 2 -

1 incident. Segwick then "gathered information and generated an incident report. The store
2 employees also sent certain materials to Sedgwick." Response (#86) at 2. The incident report and
3 gathered information has all been produced. *Id.* On January 27, 2010, Sedgwick informed
4 Walgreens' in-house attorney, Michael Freeman, of the incident by email. *Id.* Freeman responded
5 the same day with an email that stated he anticipated litigation as a result of the incident and he
6 would like Sedgwick's assistance in conducting an investigation of the incident. *Id.* Sedgwick then
7 began an investigation.[2] *Id.*

8 Walgreens argues that the notes and information collected by Sedgwick's investigation were
9 created in anticipation of litigation and are therefore privileged. Conversely, McKenzie asserts that
10 all documents created before she put Walgreens on notice that she retained counsel were not in
11 anticipation of litigation and were created in the ordinary course of business

12 In cases like this, where documents are generated prior to litigation by a third-party
13 investigator on behalf of the defendant, the Ninth Circuit established the standard for whether the
14 documents are deemed to have been created "in anticipation of litigation" in *In re Grand Jury*
15 *Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004). In that case, the Ninth
16 Circuit adopted the "because of" standard from the *Wright and Miller Federal Practice & Procedure*
17 treatise:

18 > This formulation states that a document should be deemed prepared "in anticipation of
19 > litigation" and thus eligible for work product protection under Rule 26(b)(3) if "in light of
> the nature of the document and the factual situation in the particular case, the document can
> be fairly said to have been prepared or obtained because of the prospect of litigation."
20
21 *Mark Torf*, 357 F.3d at 907; citing Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus,
22 *8 Federal Practice & Procedure § 2024* (2d ed. 1994).

23 This standard considers "the totality of the circumstances and affords protection when it can
24 fairly be said that the 'document was created because of anticipated litigation, and would not have
25 been created in substantially similar form but for the prospect of that litigation[.]'" *Mark Torf*, 357

---

26 [2]McKenzie spends much of the Reply focused on a perceived inconsistency in Walgreens'
27 Response brief (#86) relating to the initiation of Sedgwicks investigation. Reply (#87) at 5-8. The
Court has reviewed McKenzie's concerns and finds that although Walgreens emphasizes different
28 aspects of Sedgwicks role at various points in its Response, the facts provided on the first page of
the Response's introduction are consistent with the rest of the brief.

1   F.3d at 908; citing *United States v. Adlman*, 134 F.3d 1194, 1202 (2nd Cir.1998). The nature of the
2   document and the factual situation of the particular case are key. *Id*. For example, the Ninth Circuit
3   in *Mark Torf* found that documents were created in anticipation of litigation when the Defendant
4   hired the investigator "only after learning that the federal government was investigating it for
5   criminal wrongdoing; a circumstance virtually necessitating legal representation." *Mark Torf*, 357
6   F.3d at 909.

7   Here, McKenzie argues that the facts of this case do not indicate that there was impending
8   litigation. McKenzie points out that she had not yet retained counsel when Sedgwick began its
9   investigation; Sedgwick is always contacted by Walgreens employees when there is an accident in
10  a store; and Walgreens never denied McKenzie's demand nor declared a position. Emergency
11  Motion (#69) at 7-8. McKenzie also argues that"[i]n reviewing Walgreens' privilege log, it appears
12  that the parties were jointly exploring ways to resolve their differences up until the time when
13  Plaintiff finally filed her lawsuit." *Id*. As for the nature of the documents, McKenzie states that
14  "Sedgwick's investigation would have occurred regardless of the letter from Walgreens' in-house
15  counsel because that is what Sedgwick was hired to do." Reply (#87) at 7. McKenzie asserts that
16  "[t]he letter from Walgreens' in-house counsel sent to Sedgwick was merely sent in an attempt to
17  shield all of its investigatory information under the veil of work product." Reply (#87) at 8.

18  McKenzie's arguments are not convincing. McKenzie's fall and subsequent ambulance
19  assistance and hospital visit virtually necessitated legal representation. The fact that Sedgwick's
20  first step after collecting information on the incident was to contact in-house counsel supports this
21  conclusion. Indeed, based on information Sedgwick provided about McKenzie's fall, Walgreens
22  determined that it was likely going to be sued, and requested a continued investigation.[3]

23  Next, although McKenzie did not retain counsel for 10 days, McKenzie claims that, during
24  that time, she was severely injured and in the hospital. It is thus both understandable and expected
25  that she may take a few days to retain counsel. The 10-day delay does not, however, indicate that

---

[3] Walgreens acted similarly to the defendant in *Mark Torf*, because it requested for Sedgwick to investigate only after learning that McKenzie had fallen and was severely injured in one of its stores, and thus that litigation would likely commence. *See Mark Torf*, 357 F.3d at 909.

- 4 -

1  she had no intention of suing Walgreens or that Walgreens did not expect to be sued. McKenzie also
2  argues that the privilege log itself somehow indicates Walgreens did not anticipate a lawsuit. The
3  Court has reviewed the privilege log and finds no basis for this assertion.

4  Walgreens' decision to not declare a position within the first 10 days is entirely consistent
5  with its position that it was anticipating litigation. As the Defendant in this matter, even though
6  Walgreens was expecting to be sued, it did not have to take additional steps to increase the
7  likelihood it would be sued, such as deny or declare any position. Additionally, Walgreens was
8  awaiting the completion of the investigation of the incident during those 10 days. McKenzie was
9  present for her fall, but Walgreens representatives were not and, thus, Walgreens was collecting
10 information during this time period to prepare for the inevitable lawsuit. Indeed, Walgreens counsel
11 went so far as to explicitly state in an email to Sedgwick that it would like an investigation to be
12 conducted because it anticipated a lawsuit. Although McKenzie asserts that the email was "merely
13 sent in an attempt to shield all of [Sedgwick's] investigatory information under the veil of work
14 product . . .," sufficient facts to support such a finding simply do not exist. *See* Reply (#87) at 8.
15 Rather, the circumstances of this case indicate that in-house counsel did think Walgreens was going
16 to be sued over this incident and thus, when in-house counsel said it anticipated litigation, it was -
17 quite simply - because it anticipated litigation.

18 Finally, as to McKenzie's allegation that Sedgwick would have conducted an investigation
19 regardless of Walgreens' in-house counsel's instruction to do so, the Court disagrees. It is clear
20 from the facts that Sedgwick's job is to conduct preliminary investigations when notified of
21 incidents by Walgreens' employees. Sedgwick then approaches in-house counsel with information
22 about incidents and in-house counsel decides whether a continued investigation is necessary. Thus,
23 the assertion that Sedgwick would have investigated regardless of whether Walgreens asked it to do
24 so is entirely baseless. No facts have been presented to support a finding that Sedgwick would
25 investigate incidents which Walgreens has no interest in having investigated.

26 Accordingly, based on the totality of the circumstances in this case, it is clear that Walgreens
27 anticipated litigation upon learning that McKenzie fell in a Walgreens store.
28 . . . .

- 5 -

**B.      Summaries of Information, Instructions by Sedgwick Employees, and Correspondence**

McKenzie next argues that claims notes, including factual summaries and instructions from supervisors of Sedgwick, and separate correspondence listed in the privilege log are not work product to the extent that they contain purely factual information. Walgreens admits that the summaries at issue here are "purely factual in nature" but contends that they are still work product because they represent the attorney's labor and McKenzie should not be permitted to take advantage of that labor. Response (#86) at 11.

The work product doctrine "is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney . . ." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). Further, "[o]ne of the primary purposes of the work product doctrine is to prevent one party exploiting the other party's efforts to prepare for litigation. *Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d 1076, 1083 (C.D. Cal. 2010); citing *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir.1992); also *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir.1989). Thus, because these documents were created in anticipation of litigation, as discussed above, and for the purpose of assisting in the defense, they are work product and are thus privileged documents. *See Mark Torf*, 357 F.3d at 901 and 908.

**C.      Substantial Need**

The Plaintiff has failed to demonstrate substantial need for the privileged documents. *See* Fed.R.Civ.P. 26(b)(3); *Holmgren v. State Farm Mutual Ins. Co.*, 976 F.2d 573, 576-77 (9th Cir. 1992) (describing rule and citing *Hickman v. Taylor*, 329 U.S. 495 (1947)).

. . . .

. . . .

. . . .

. . . .

- 6 -

## II. Attorney-Client Privilege

The Plaintiff asks this Court to find that certain documents are not protected under the Attorney-Client Privilege and thus order them turned over in discovery. As the Court has already found that these documents are protected under the Work Product Doctrine, however, the Court does not need to reach this issue and denies it as moot.

## III. *In Camera* Review

Based on the foregoing and good cause appearing therefore, the Court finds that *in camera* review is not appropriate nor necessary to resolve this dispute.

## CONCLUSION

Based on the foregoing, and good cause appearing therefore,

**IT IS HEREBY ORDERED** Plaintiff's Emergency Motion to Compel (#69) is **DENIED.**

DATED this  19th   day of February, 2013

_____
NANCY J. KOPPE
United States Magistrate Judge

- 7 -